Madam Clerk, please call the first case of the morning. 1143044, Stanford-Dorsey v. Sears-Chapman Counsel, you may proceed. Good morning, Riders. Nicholas Rubino here from William Button Meyers & Associates for the appellate Stanford-Dorsey. As of the first issue raised in my brief, I will stand by the brief as I truly understand the manifest weight standard it's difficult to overcome. And what has been placed within my brief is the full extent that can be argued under the law as to whether or not the proximal insertion point of the bicep relates to the shoulder or to the arm in light of the Will County Forest Preserve decision. My second and third points, though not only lend to the manifest weight standard, but matters of law and equity under the Workers' Compensation Act. In light of the Will County Forest Preserve decision in 2011, there is a patent inequality between similarly situated petitioners who sustained arm injuries and shoulder injuries determined solely upon the date and timing in which the injury happened and the case was either settled or tried. In Mr. Stanford Dorsey's case, he sustained an undisputed shoulder-only injury in 1995 and was settled in 1998. It contained injuries only to his rotator cuff and to his labrum. And as of the rule of 1998, his case was settled pursuant to a scheduled award under Section 8E to his arm. In 2010, he sustained an injury which, as I just stated, I think like-minds can disagree, but you will most likely decide, like the Commission and Circuit Court did, that this was solely an elbow injury. And that lends credence to the position that there is an inequality now under Will County. Mr. Dorsey had an elbow injury which is undoubtedly a scheduled award under Section 8E. Had his previous shoulder injury occurred after 2011, it would have been a Section 8D-2 award where no Section 8E-17 credit would be granted. And there's multiple situations that are now created because of Will County where we can have like-minded petitioners with completely different outcomes under the credit rules in Section 8E-17. A petitioner with an arm injury before Will County and a shoulder injury afterwards is treated then completely differently than a petitioner who had a shoulder injury before Will County and an elbow injury after. Likely, someone who sustained two shoulder injuries prior to Will County is now completely treated differently than someone who had, say, two shoulder injuries after Will County. This has been a struggle not just for the petitioner's bar, but for the respondent's bar. What we would likely see and expect under Section 8E-17 and would have been the case from the inception of the Act until 2011, two shoulder injuries which were scheduled awards would have been granted credit to the respondent. Now they're not. For petitioners, you had a situation where someone sustained a shoulder injury and only a shoulder injury, completely recovered 15 years past, and now suffers an elbow injury and an elbow injury only. And respondents granted a credit, and in this case a 30% credit, against one injury that did not affect the other. Because the Act provides the employer's supposed to get the credit, correct? The Act would definitely provide that under the scheduled award, two 8E awards, there should be a credit. Of course. So what's your argument? So how does that, those competing positions get reconciled? I think one that's obviously in your province, but I think there's a couple options. Either pre-Will County versus post-Will County awards, there's an exception carved out on how to handle 8E-17 credits to further the province under the Act and the equity under the Act. Because otherwise what is being created is a situation where petitioners are being harmed when there's injuries that have no effect on one another. And respondents are being harmed when there truly probably should be a credit for like-minded injuries and similar injuries that they're not getting credit and will not get credit into the unforeseeable future as long as that injury is to the shoulder. And what's the other alternative? The other alternative would be that you have to treat pre-Will County injuries as 8E-2 awards if they're to the shoulder. Because the court has decided that a shoulder, using the detailed and well thought out explanation within the award in Will County Forest Preserve extent itself explains that medical, the medical literature is clear that the shoulder is not part of the arm. So within each case that has this problem, there would be a case within a case of proof of whether this really was just a shoulder injury. Well I think it would either need to be that they're treated as an 8E-2 award because we've said a shoulder is now part of the man as a whole and not a scheduled award. Or it is 8E-17 is changed to be a discretionary. This case would be that section 8E-17 credit is discretionary based upon whether or not it applies to the scheduled body part at the time of the original injury for which a credit would be granted. So in this case because you'd be dealing with a shoulder and an arm, you would look at 8E-17 and say no credit should be granted because these would not have been similarly situated body parts. And in this case how did you prove up that the previous injury was strictly a shoulder injury? Well the previous shoulder injury was a labeled tear, a rotator cuff tear. It was a scoped procedure. I mean did you get medical records? Did you introduce the prior settlement agreement? We introduced the prior settlement agreement. In this record the prior settlement agreement and approval stamp and everything from the arbitrator is held in the record. That's the only thing. And does it say injury to shoulder? It says shoulder injury. On the front page of it it would have said what the injury was like the pink contracts do. And I don't think that would be disputed in this case. It's not in this case but you're asking us to... Well I think that's how you would do it. The medical evidence would determine what the original injury was. And usually they're not issues. The reason this is an issue is because of the Will County change. Which I'm not saying is necessarily a bad decision. I'm just saying that now petitioners are treated differently with really no sense of applying the rules and equity of the Act regarding double recovery. Solely because of the change from 8E to 8D2 under the Act. So if the question is just how do you prove it as a generality, if an exception were to be carved out, you introduce the medical evidence of the original award. And I don't think in being at the Commission every day that that would be an issue. If you have a labral injury, obviously I make it an issue in this case because I had to preserve my record under appeal, that potentially if you have a distal bicep rupture and proximal surgery which would cause anchoring to the shoulder, in that specific case maybe you could say it's a shoulder. But like I said, I think the argument is that the majority of that injury happened to the elbow. And I think that my client opposing counsel would probably agree that that was an elbow injury in this new case. Like I said, the basic principle under the argument that I've made in my second and third arguments is just that there is a patent inequality now in light of Will County. Not to say that Will County was a wrong decision. I think medically it is the proper decision regarding how the medical community defines what an arm injury is. It's below the elbow. But in doing so, we have to rectify the situation that is now created under the Section 8E17 credits because as it stands today, it is a shale. And if it is a shale, then the court must take it into consideration and must appoint that credit. And the problem with that is if the court and the arbitrator and the commission are forced to apply credits, where case law has drastically changed how it's applied because of different injuries, you're going to have all these situations where petitioners are being treated differently. There is discretion under the Freedom case, as I said, but that of course rises under a PTD situation instead of a PPD situation and would be instructive as how potentially you might move forward in terms of discretionary. And I cited it in my brief, the Freedom decision is a situation where there was an amputation at the legs. PTD situation regarding whether or not a credit applied because of previous amputations. But that would be the manner in which I think we should be moving forward under Section 8E17 is to somehow carve out a discretionary provision or, and this would be a case, obviously it's not something that's coming down from the legislature, to provide for the inequality that's now created under Wilk County. Thank you. Thank you, Counsel. Do I have time to reply? Counsel, you may respond. Good morning, Your Honors. May it please the Court. In this case, the Commission entered an award for a 37.5% loss of use of Mr. Dorsey's left arm Could you tell us who you are? Sure. I'm Susanna Lois. I represent the City of Chicago, the defendant, Appley, in this case. And in this case, the Commission entered an award for a 37.5% loss of use of Mr. Dorsey's left arm and deducted a credit for 30% of the loss of use of the same arm for which Mr. Dorsey received compensation in 1998. Since my opposing counsel has rested on the record for his argument that the injury was to the shoulder rather than to the arm, I too will rest on my brief for our position that the Commission's decision that the injury was to the arm is not against the manifest weight of the evidence. And I would also point out that my opposing counsel has not responded to all the points we made in our Appley's brief, either in our reply brief or before this Court. Moving on to the credit issue, the Commission correctly granted the City a credit based on Mr. Dorsey's 1998 compensation for an arm injury. Mr. Dorsey does not dispute that he received compensation for a 30% loss of use of his left arm and that receipt of compensation is what triggers the credit due under Section 8017. And in General Motors, Illinois Supreme Court made clear that compensation pursuant to a settlement agreement counts for purposes of the credit. Since Mr. Dorsey received compensation for use of the arm, the City was properly awarded a credit for the loss of use of the same arm here. Now, Mr. Dorsey's counsel points out that since that 1988 credit, Will County was decided and Will County held that shoulder injuries, which is what he claimed for the 1995 injury, are not treated as an injury to the arm under Section 80. Nothing about that decision, however, changes the fact that Mr. Dorsey received compensation under that settlement for the loss of use of his left arm and that's the key under the plain language. Do you have any dispute that it was a shoulder injury? I do not know whether what he claimed it was a shoulder injury and it was settled as a loss of use of the arm. Your argument assumes that it actually was a shoulder injury. Well, we can assume that it is and that settlement is still valid. We don't know what the medical record said in that case and I don't know. That's not before the court in this case because, of course, this isn't a reopening of that case. That case is closed and we don't have the medical record so I don't know what position the City might have taken to challenge the nature or extent of the injury. It was a settlement and there were no commission findings that it was a shoulder injury. But it is the case that before Will County, parties did treat, before the commission generally, shoulder injuries as injuries to the arm. Okay, so let me ask my question again. Is it disputed whether it was a shoulder injury? We don't take a position on whether it was. It is disputed? Yes. You don't concede in any way? I don't take the position that it's not. I don't have the medical records before me to make the determination of the position the City would have taken had that case gone forward instead of settled. So it's basically an unrebutted position? Right. Well, an unrebutted position in a case that is being closed as a settlement for an injury to the arm. Okay. And Will County certainly changes how parties settle cases and how the commission decides cases on a going forward basis. But case law often evolves after settlements are entered into and that does not change the nature of the settlements that are entered into before the decision. As this Court held in one of the cases we cite in our brief, the Cameron v. Bogus case, a failure to anticipate the development of case law is no basis to invalidate a settlement. Even if the parties review a case differently, if it were open now, it does not change the fact that there was a settlement and under it, compensation was actually received pursuant to Section 8E. And it is far too late for Mr. Dorsey to claim that compensation for the 1998 injury should have been pursuant to Section 8D2. He agreed to compensation for loss of use of his left arm and under the plain language of the statute, the City is entitled to a credit for that compensation. And as my opposing counsel suggested here this morning, it makes no sense just to simply treat those as awards under 8D2. Those are different awards with different calculations and different proofs. And this is not a case to void that agreement or to go back and revisit it. And certainly that's not an appropriate solution under Section 8E17 when these cases arise. Of course, parties knowingly enter into these settlement agreements based on their knowledge of the case law at the time. And there's no inequality both before and after Will County, when a claimant has received compensation for a scheduled injury, the employer will receive a credit. The inequality would occur if some of these settlements under Section 8E were given effect while others were not. So when we submit that advice... You're saying this inequality argument is like a red herring? Is that basically what you're saying? It is a red herring. And the inequality would be Section 8E17 tells us when a credit is due. And the inequality would result if the party who has received compensation for the loss of arm, the city received a credit in some cases and not in others. When in both situations you have the receipt of compensation for the loss of use of arm. My opposing counsel is saying that in some of those cases you go back and you look at what the injury really was, almost reopen the case, which is what you would normally do when there has been a settlement and a subsequent change in the law. It may have changed how the parties would have approached that settlement, but it doesn't change the essence of the settlement. And here in this case, Mr. Dorsey received the benefit of that bargain. And it would be fundamentally unfair for the claimant to receive the benefit of the bargain, but not the city. And the availability of a credit is a factor in settlement. And so the city might not have settled or things may have come out differently, but that does not change the fact that under Section AE17 compensation was received based on an injury to the arm under Section AE. So for all these reasons, I believe the Commission was correct in issuing the credit under Section AE17. And we do ask that the decision of the Commission be affirmed. Thank you, counsel. I guess opposing counsel must have left. That's called the counsel table for a reason. You should be sitting there. Yeah. I mean, while you're giving your argument, I don't think it would be proper for opposing counsel to be sitting in the back. Those are called counsel tables for a reason. I apologize. Because I just assumed you left. You want to reply? Yes. Okay. Your Honor, to briefly reply to what counsel said. First, in response to what Your Honor, Honorable Harris asked, the Commission did also note that the 1998 award was limited to the rotator cuff. So the Commission did take notice of what the injury itself was. Additionally, what I'm asking is not that there be a new inequality created. What I'm asking for is that, and counsel kept alluding to the word compensation. He was compensated previously. The Act and the Commissioners, they're not concerned necessarily with dollars and cents in compensation. They're concerned, and the Act says that they should equally apply how the injury itself is categorized under the law and what the percentage law should be assigned to that. That's what the arbitrator and the Commission decides. They're not deciding necessarily pure compensation. They're deciding how the injury is categorized and whether or not it should receive a percentage and then how much. What I'm asking for is that the determination when you're deciding whether or not to apply a credit should follow the same line of reasoning. The same line of reasoning that we've asked arbitrators and Commissioners to take well before Phil County. That you determine whether or not what injury falls under and then you determine whether or not a credit applies. Because if you're just talking about pure compensation, think about shoulder injuries now moving forward after 2011. Unlimited recovery because they're mad as a hole. AT2, no credits. But you're saying someone that sustained a shoulder injury versus an arm injury is going to be forced to have a credit applied to them even though, simply because of Will County, we're now changing how their body part is classified. What I am saying is that in Mr. Dorsey's case and moving forward, we need to apply the credit situation to something that has equity. As the Commission has said for decades before Will County, we're doing it based upon the classification of the body part. Now that the Commission and the appellate court has changed the classification of the body part, the credit law needs to change with it. That is the argument. The credit law needs to change with the changes under Will County so that they can be applied equally to petitioners. Is this a matter for legislative discussion? It could be, but I don't think it stops the appellate court from making the decision that we need to have. As the appellate court decided Will County and changed the classifications, and that was not a decision for the legislature. I don't think there's anything saying that the appellate court can't decide and change how credit laws would apply in light of the Will County decision. As that was the decision that the appellate court made. Thank you, Your Honor. Thank you, counsel, both for your arguments. And this morning it will be taken under advisement and a written disposition shall issue.